**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-03200-RM-SKC

NEDA SAMIMI-GOMEZ, individually and as personal representative of the Estate of Kamyar Samimi;

NEGEEN SAMIMI; and

ANTHONY SAMIMI,

        Plaintiffs,

v.

THE GEO GROUP, INC.; and

JEFFREY ELAM PETERSON, M.D.,

        Defendants.

**PLAINTIFFS' MOTION FOR ENTRY OF ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Pursuant to Federal Rule of Civil Procedure 26, Plaintiffs Neda Samimi-Gomez, individually and as personal representative of the Estate of Kamyar Samimi, Negeen Samimi, and Anthony Samimi ("Plaintiffs") hereby submit this Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information ("ESI Protocol"), and respectfully request that the Court enter Plaintiffs' proposed ESI Protocol attached as **Exhibit A**.

    **I.**      **INTRODUCTION**

Over the past several months, Plaintiffs and Defendants have met-and-conferred on numerous occasions in an attempt to reach agreement on an ESI Protocol. Plaintiffs circulated a proposed ESI Protocol, and the parties discussed that draft telephonically on February 4, 2020.

Defendants objected to the draft and circulated a proposed redline on February 13, 2020, rejecting much of Plaintiffs' original draft. Defendants' redline, with all changes accepted, is attached as **Exhibit B**.

Plaintiffs' proposed ESI Protocol requires (1) that ESI be produced in an industry-standard, searchable format; (2) that certain metadata, to the extent it exists, be produced unless the producing party timely objects; and (3) that hardcopy documents produced electronically be produced in a searchable format with applicable metadata. Defendants proposed ESI Protocol, by contrast, provided (1) that ESI could be produced in any format, so long as it is "reasonably usable" to the requesting party—in essence, no protocol at all; (2) that metadata should be produced only if the requesting party can articulate its relevance on a case-by-case basis (without ever seeing the metadata beforehand); and (3) that hardcopy documents produced electronically should be produced in .pdf format, regardless of whether such documents are searchable, and with no metadata.

The parties again met and conferred on this issue on April 1, 2020. During that meeting, Defendants agreed that the parties could produce documents in searchable .pdf format; however, Defendants indicated that they would be unwilling to produce any metadata, whatsoever, unless Plaintiffs, without seeing the applicable metadata, could articulate its relevance on a case-by-case basis. While Plaintiffs appreciated Defendants' agreement to produce searchable documents, Defendants' position on metadata was unworkable for at least four reasons. First, Defendants' position was at odds with precedent in this Circuit. *See Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 652 (D. Kan. 2005) ("[T]he Court holds that when a party is ordered to produce electronic documents as they are maintained in the ordinary course of business, the producing party

2

should produce the electronic documents *with their metadata intact*, unless that party timely objects to the production of metadata, the parties agree that the metadata should not be produced, or the producing party requests a productive order.") (emphasis added).  Second, Defendants' proposal would unduly prejudice the requesting party by requiring that it articulate the relevance of metadata on a document-by-document basis without ever seeing such metadata.  Third, Plaintiffs would be prejudiced because metadata is likely important to its claims.  For example, Defendant GEO Group, Inc.'s ("GEO") policies may have changed over time, and, understanding the various iterations of those policies, which metadata could help shed light on, is highly relevant to Plaintiffs' claims.  Finally, Defendants' proposal would likely result in unnecessarily inundating this Court with discovery disputes, as each party would be required to object to the other's failure to produce metadata without ever seeing that metadata.  For these reasons, Plaintiffs could not agree to Defendants' proposal.

In response, Defendants did not address Plaintiffs' substantive concerns, but merely indicated that, if the parties produce metadata, Defendants may need to retain an e-discovery vendor, which could increase its litigation costs.  However, Plaintiffs believe that both parties will likely need to retain e-discovery vendors in this case—routine in complex wrongful death cases such as this one, involving multiple witnesses and potentially significant volumes of ESI.  Moreover, Plaintiffs believe that their substantive concerns, outlined above, outweigh any cost inconveniences that Defendants—one of which is a multi-billion dollar company—would incur.  Accordingly, for these reasons, and for those discussed below, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed ESI Protocol.

II. **ARGUMENT**

Plaintiffs' approach, which clearly defines the parameters for how documents should be produced, and requires the production of certain applicable metadata unless the producing party timely objects, would result in a more transparent and fair discovery process. Additionally, Plaintiffs' approach would also likely drive down discovery costs by requiring an industry-standard production format and that all documents be searchable.

### A. ESI Should Be Produced in an Industry-Standard Format.

This Court has recognized that "it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata . . . because the production is in usable form, e.g., ***electronically searchable and paired with essential metadata***. Email is not typically produced in native file format because the extraction of individual emails from a large database containing other emails requires conversion of the file format into a near-native format." *Nat'l Jewish Health v. WebMD Health Services*, 305 F.R.D. 247, 254 (D. Colo. 2014) (emphasis added; internal citations and quotations omitted).

Plaintiffs' proposed ESI Protocol requires that ESI be produced in an industry-standard format that has already been approved by this Court. That is, ESI, such as emails and attachments, should be produced in single page Tagged Image File Format ("TIFF"), with metadata load files and searchable text. Documents that are not as well suited for the TIFF format, such as Excel spreadsheets, PowerPoint presentations, and audio/video files should be produced in their native format. This allows ESI to be loaded into commonly used e-discovery platforms, such as Relativity, which promotes cost effectiveness and efficiency of review. Additionally, Plaintiffs'

4

proposed ESI Protocol requires the production of certain applicable metadata (unless the producing party timely objects), which could reveal information such as who created the document, when it was created, and when the document was last modified. This information—which, as discussed in the next section, is generally required to be produced absent timely, individualized objection by the producing party—will likely be important to both parties' factual investigations. Finally, producing metadata will allow the parties to run searches over the metadata fields to quickly identify the documents that are most relevant to the parties' claims and defenses. In sum, Plaintiffs' proposed ESI Protocol promotes transparency and cost efficiency.

By contrast, Defendants' proposed ESI Protocol allows the parties to produce documents in any "form or forms reasonably usable to the requesting party." This language is really no ESI Protocol at all. Neither party has any guidance on how documents should be produced, and, presumably, can produce documents in almost any format whatsoever. Defendants' protocol also makes it more difficult for the parties to (1) determine what format the document was originally kept in (particularly if the parties are not producing applicable metadata); and (2) determine when to object to the production. Defendants' proposed ESI Protocol will also result in cost inefficiency. It provides no guidance on what format the parties should produce documents in, likely resulting in the parties producing documents in two completely different formats. Additionally, producing documents without metadata will drive up costs because the parties will not be able to run searches over the metadata to quickly determine which documents are important to the case.

The parties need a clearly defined protocol to govern the discovery process. Merely stating that documents will be produced in a "reasonably usable" format is no protocol at all, and will only serve to decrease transparency, create confusion, and increase costs.

5

### B. Documents Should Be Produced with Applicable Metadata.

"Metadata, which is commonly described as 'data about data,' is defined as '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.'" *United States v. Hammond*, 672 F.3d 948, 952 n.10 (10th Cir. 2012). "Metadata can describe how, when, and by whom ESI was collected, created, accessed, modified, and how it is formatted." *The Sedona Conference Glossary: E-Discovery & Digital Information Management* 34 (S. Harris ed., 3rd ed. 2010). The Federal Rules of Civil Procedure state that, unless a discovery request does not specify a form for producing ESI, it must be produced as it is "kept in the usual course of business[.]" Fed. R. Civ. P. 34(b)(2)(E)(i). Courts in the Tenth Circuit have held that "when a party is ordered to produce electronic documents as they are maintained in the ordinary course of business, a producing party should produce the electronic documents ***with their metadata intact***, unless that party timely objects to production of metadata, the parties agree that the metadata should not be produced, or the producing party requests a protective order." *Williams*, 230 F.R.D. at 652 (emphasis added). The *Williams* court reasoned that the burden to object should be on the producing party because "that party already has access to the metadata and is in the best position to determine whether producing it is objectionable." *Id.* Moreover, "metadata is an inherent part of an electronic document, and its removal ordinarily requires an affirmative act by the producing party that alters the electronic document." *Id.*

The Sedona Conference reached the same conclusion. Principle 12 states:

[P]roduction should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, ***taking into account the need to produce reasonably accessible metadata*** that will enable the receiving party to have the same ability

6

to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

The Sedona Conference, *The Sedona Principles: Second Edition—Best Practice Recommendations & Principles for Addressing Electronic Document Production* 60 (2nd ed. 2007) (emphasis added) [hereinafter *Sedona Principles*]. Comment 12.a to the Sedona Principles notes that "[a]side from its potential relation to the facts of the case, metadata may also play a functional role in the usability of electronically stored information. For example, system metadata may allow for the quick and efficient sorting of a multitude of files by virtue of the dates or other information captured in metadata." *Id.* And comment 12.b recommends that metadata be preserved to "better protect[] against inadvertent or deliberate modification of evidence by others and the systematic removal or deletion of evidence by others" and so that the producing party is not "deprive[d] . . . of the opportunity later to contest the authenticity of the document if the metadata would be material to that determination." *Id.* at 63.

Here, Plaintiffs' proposed ESI Protocol calls for the production of certain metadata fields, if they exist. To be clear, Plaintiffs are not asking Defendants to produce metadata fields if they do not exist. If a document has no metadata, Defendants can simply note that and produce the document without metadata. However, if a document has metadata, Plaintiffs ask that Defendants do not affirmatively remove the metadata, and either (1) produce the document with the metadata in-tact; or (2) provide Plaintiffs with a description of the metadata and timely object to its production on an individualized basis. Since only the producing party has access to the applicable metadata, that party, as the *Williams* court held, should have the burden of objecting to its production.

7

By contrast, Defendants' proposed ESI Protocol (1) calls for the production of searchable .pdfs without metadata; and (2) improperly puts the burden to object on the requesting party. Defendants' protocol states that "[s]hould the requesting party . . . articulate the need and/or relevance of metadata load files, the parties agree to confer in good faith regarding the same prior to seeking court intervention." These are a number of issues with Defendants' proposal.

First, this Court has held that "a party's conversion of the emails and attachments to PDF documents [without metadata] does not satisfy the obligation to provide documents in a reasonably usable format, particularly when the date of the creation or authorship of documents is a critical issue in the case." *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-CV-00047-MSK-MEH, 2010 WL 3489922, *4 (D. Colo. Aug. 31, 2010) (citing *White v. Graceland Coll. Ctr. for Pro'l Dev & Lifelong Learning*, 586 F.Supp.2d 1250, 1264 (D. Kan. 2008)) (internal quotations omitted). Here, this is a complex wrongful death case with multiple witnesses and potentially large volumes of ESI. Understanding the timeline of events and iteration of any applicable policies and procedures in place at the Aurora Contract Detention Facility ("ACDF"), are likely highly relevant to the parties' claims and defenses.[1] Second, as the *Williams* court noted, the requesting party does not have access to the metadata, and, without seeing it or being provided a description of it, may have difficulty "articulating the need and/or relevance" of such metadata, as Defendants' proposed ESI Protocol requires. As such, the burden of objecting should be on the producing party, *i.e.*, where Plaintiffs' proposed ESI Protocol puts the burden. Fourth, Plaintiffs' approach is accordance with the Sedona Principles, which state that the receiving party should "have the same ability to access,

---

[1] For example, Plaintiffs will need to understand what policies GEO and/or ICE had in effect at ACDF at the time Kamyar Samimi was at the facility, and whether such policies have subsequently changed. Producing metadata will likely shed light on this.

8

search, and display the information as the producing party. . ." Fifth, producing metadata would likely reduce e-discovery costs. As the Sedona Principles note, "system metadata may allow for the quick and efficient sorting of a multitude of files." Producing metadata will allow the parties to search documents by, among other things, date, custodian, and email subject, which will allow the parties to more quickly identify documents that are most relevant to their claims and defenses. For these reasons, this Court should enter Plaintiffs' proposed ESI Protocol, attached as Exhibit A, which requires the production of certain metadata fields unless the producing party timely objects.

### C. Hardcopy Documents Produced Electronically Should Be Produced in a Searchable Format with Applicable Metadata.

Finally, Plaintiffs' proposed ESI Protocol requires that electronically-produced hardcopy documents be produced as single page, searchable TIFFs, with the same load files and metadata fields as provided for ESI. Defendants' proposed ESI Protocol merely states that hardcopy documents produced electronically should be produced in .pdf format, regardless of whether such documents are searchable. Defendants recently represented that they modified their position to allow for the production of searchable documents in .pdf format, but without any applicable metadata.

Plaintiffs' approach, like with ESI, results in more transparency and cost efficiency. Producing documents in an industry-standard format and with applicable metadata fields will ensure that the parties can load the documents into an e-discovery platform and learn potentially valuable information though the metadata fields. Additionally, by requiring that the documents be produced with applicable metadata, the parties can run searches of the metadata and quickly identify the documents most relevant to the key issues in the litigation.

By contrast, under Defendants' approach, the .pdfs would contain no metadata fields unless the parties meet-and-confer in advance. Under Defendants' protocol, however, the requesting party would not have access to any metadata fields, so they—like with ESI—may not be in a position to reasonably meet-and-confer about whether such fields are necessary. In sum, the parties would be left in the dark. Such an approach would also likely drive up discovery costs because of the inability to search metadata fields, an abundance of meet-and-confers between the parties, and potentially bringing numerous discovery disputes before this Court because the parties are unable to agree on whether metadata fields are relevant, particularly if only the producing party has access to such fields.

### III.  CONCLUSION

Plaintiffs respectfully request that the Court enter its proposed ESI Protocol, attached as Exhibit A, in its entirety.

Respectfully submitted,

April 27, 2020

**BAKER & HOSTETLER LLP**

*/s/ Sean B. Solis*
Sean B. Solis
Paul G. Karlsgodt
Marc D. Flink
Matthew C. Baisley
Michelle R. Gomez
1801 California Street, Suite 4400
Denver, Colorado 80202
Tel:  303.861.0600
Fax:  303.861.7805
Email:  ssolis@bakerlaw.com
           pkarlsgodt@bakerlaw.com
           mflink@bakerlaw.com
           mbaisley@bakerlaw.com
           mgomez@bakerlaw.com

10

*In cooperation with the ACLU Foundation of Colorado*

Mark Silverstein
Sara R. Neel
Arielle Herzberg
ACLU Foundation of Colorado
303 East 17th Avenue, Suite 350
Denver, Colorado 80203
Tel:  720-402-3107
Fax:  303.777.1773
Email:  msilverstein@aclu-co.org
           sneel@aclu-co.org
           aherzberg@aclu-co.org

*Counsel for Plaintiffs*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Defendants' counsel on February 4, 2020 and April 1, 2020, by telephone, as required by Local Rule 7.1(a) in a reasonable, good faith effort to resolve this matter.  Defendants indicated that they are OPPOSED to Plaintiffs' Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information.



*/s/ Sean B. Solis*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Plaintiffs' Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information was filed and served via the Court's ECF system on all counsel of record on this 27th day of April, 2020.

*/s/ Sean B. Solis*