**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.   19-CV-03200-RM-SKC

NEDA SAMIMI-GOMEZ, individually and as personal representative
of the Estate of Kamyar Samimi;
NEGEEN SAMIMI; and
ANTHONY SAMIMI,
Plaintiffs,

v.

THE GEO GROUP, INC.; and
JEFFREY ELAM PETERSON, M.D.,
Defendants.

---

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

---

Defendants, The GEO Group, Inc. and Jeffrey Elam Peterson, through their respective attorneys, hereby submit this Response in Opposition to Plaintiffs' Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information and in support state as follows:

**INTRODUCTION**

Plaintiffs' Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information inaccurately represents the dispute between the parties and fails to demonstrate grounds for entry of an ESI protocol order. Defendants have never advocated for an ESI protocol. Plaintiffs initially raised the issue and since that time Defendants have consistently questioned the need for such a protocol. (*Exhibit A, Email from Ann Smith dated 1/27/2020*; *Exhibit B, Email from Ann Smith*

1

*dated 1/29/2020*).  What Plaintiffs misleadingly characterizes as "Defendants' proposal" really represents Defendants' effort to confer in good faith with Plaintiffs regarding Plaintiffs' proposed ESI Protocol.  Defendants' efforts to confer and find common ground was ultimately rejected by Plaintiffs' counsel without counterproposal.  Defendants never even agreed to the need for an ESI protocol, and certainly never intended that their good faith efforts to confer would be represented by Plaintiffs as "Defendants' proposed" ESI protocol. To be clear, for the reasons stated below, Defendants do not agree that any ESI protocol is necessary in this case.

The existing framework created by the Federal Rules of Civil Procedure is perfectly adequate to create a transparent and fair process for the discovery of ESI.  Plaintiffs have failed to demonstrate that additional orders beyond what is already required by the Rules of Civil Procedure, are necessary or proportional to the needs of the case.  Plaintiffs have not demonstrated a need for the far-reaching protocol they propose, which contains rigid formatting requirements and requires the parties to produce all metadata whether it is relevant or not.

In this case, the total document production currently amounts to only about 1,000 pages, which is vastly different than the document and ESI-intensive cases Plaintiffs cite to this Court.  Plaintiffs have failed to demonstrate that this case involves significant ESI, much less that any of the ESI involved is potentially relevant.  Instead, Plaintiffs largely rely on nonspecific and undefined assertions and speculation about the nature of the ESI in this case, none of which, even if true, justifies the imposition of the broad-reaching, burdensome order Plaintiffs seek.  In addition, Plaintiffs make no showing that the amount of limited damages in this wrongful death case justifies the time and

expense of such an over-reaching and expensive ESI protocol. Rather than creating an incentive for Plaintiffs to pursue far-reaching discovery beyond to the needs of this case and creating a bludgeon for Plaintiffs to use to pressure Defendants with threats of sanctions, the Court should simply deny Plaintiffs Motion.

## ARGUMENT

### I. THE COURT SHOULD SIMPLY ALLOW THIS CASE TO BE GOVERNED BY THE RULES OF CIVIL PROCEDURE.

This Court is not actually faced with a choice between two ESI proposals. Rather, the question before this Court is whether to enter an order imposing Plaintiffs' pro-offered ESI protocol on all parties over Defendants' objection. The Court should reject Plaintiffs' argument. As one Court facing a similar issue recently explained:

> Ultimately, **the Court is not required to enter an order governing the protocol for pre-certification electronic discovery. "[I]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility.**" *Agerbrink v. Model Service LLC*, No. 14-Civ.-7841, 2017 U.S. Dist. LEXIS 33249, 2017 WL 933095, *5 (S.D.N.Y. Mar. 8, 2017); *see also* The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1 (2018) ("[A] responding party is best situated to preserve, search, and produce its own ESI. [This] [p]rinciple . . . is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production."), cited with approval in *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017).
>
> **As the parties have failed to come to an agreement regarding any substantive issues regarding ESI discovery, the Court will decline to comb through the contrasting proposed orders; and rather, will direct the parties to undergo electronic discovery in compliance with the Federal Rules of Civil Procedure**.

*Moore v. Westgate Resorts*, 2020 U.S. Dist. LEXIS 3194, *43-44, 2020 WL 113352 (E.D. Tenn. January 9, 2020)(Emphasis added).

3

The Court should take the same approach in this case. Plaintiffs have proposed an ESI Protocol, but despite extensive efforts to confer and compromise on the proposed Protocol, the parties have been unable to reach an agreement. This does not mean that the Court should simply side with Plaintiffs and impose Plaintiffs' preferred protocol on the parties. As the Court recognized in *Moore*, this Court is under no obligation to enter an ESI Protocol order and, given the parties' lack of agreement, this Court should simply hold that the Federal Rules of Civil Procedure govern discovery of ESI. *See e.g.* Fed. R. Civ. P. 26(b)(2)(b) (limiting discovery of electronically stored information); Fed. R. Civ. P. 34(b)(2)(E) (discussing obligations of parties to produce ESI).

> Rule 34 already sets forth ground rules for production of ESI as follows:
>
> (E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). Plaintiffs have made no showing that these provisions are insufficient to ensure a "transparent and fair discovery process." (*Plaintiffs' Motion for Order Establishing Protocol, Doc. 56, p. 4*).

Plaintiffs also have not demonstrated a need for additional guidance or orders that go beyond the requirements imposed by the Federal Rules of Civil Procedure.

Contrary to the unfounded speculation in Plaintiffs' motion, this is not a document intensive case. To date the extent of the document production by all parties totals only approximately 1,000 pages, and Plaintiffs have already produced 900+ pages without any metadata or ESI protocol. Dr. Peterson is not in possession of any ESI relevant to the case. There is no showing that any party has produced documents in a form that is unusable or even inconvenient. Rather, Plaintiffs' primary justification appears based on speculative concerns about potential confusion or inconvenience that have not yet arisen and likely will never arise. There is no need for this Court to impose an order on the parties that will only serve to create disputes and litigation over compliance when the existing framework under the Rules of Civil Procedure is adequate. Under the circumstances, the Court should deny Plaintiffs' Motion.

## II.   PLAINTIFFS HAVE FAILED TO MAKE A SHOWING THAT ANY ESI PROTOCOL IS NECESSARY.

Plaintiffs' Motion requests that all parties be required to produce certain documents in what they characterize as an "industry standard" format. However, Plaintiffs present no evidence that the format they request is the "industry standard," and the authorities they cite fall well short of establishing that their preferred format should be required in this case, or that metadata is relevant or even potentially relevant and should be produced. Plaintiffs have failed to demonstrate a need for a Court Order imposing a rigid and complex and overreaching ESI protocol, requiring Defendants to produce documents in Plaintiffs' preferred format, especially at this stage of the proceedings, and this Court should deny Plaintiffs' Motion.

Plaintiffs suggest that the Sedona Principles provide persuasive guidance to this Court in determining whether to require the parties to produce documents in a specified

format. (*See Plaintiffs' Motion for Order Establishing Protocol, Doc. 56, pp. 6-8*); *see also Ark. River Power Auth. v. Babcock & Wilcox Power Generation Grp., Inc.*, 2015 U.S. Dist. LEXIS 59361, *38, n.9, 2015 WL 2128312 (D. Colo. 2015) ("Courts have found the Sedona Principles instructive with respect to electronic discovery issues."); *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 652 (D. Kan. 2005) (finding ""the Sedona Principles and comments particularly instructive in how the Court should address the electronic discovery issue currently before it."). However, they conspicuously fail to identify those portions of the Sedona Principles that are contrary to the relief requested in their Motion.

For example, Principle 6 of the Sedona Principles states: "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *The Sedona Principles, Best Practices Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, Principle 6 (3rd ed. 2018) (hereinafter "Sedona Principles"). Comment 6.b. states, in pertinent part:

> **Comment 6.b. Responding parties should be permitted to fulfill their preservation and discovery obligations without preemptive restraint.**
>
> There are many ways to manage ESI, and many ways in which the responding party may comply with its discovery obligations. Because the responding party generally is best situated to evaluate, select, and implement the procedures, methodologies, and technologies appropriate to meet its preservation and discovery obligations, there should be no preemptive restraint placed on a responding party that chooses to proceed on its own with determining how best to fulfill its preservation and discovery obligations. **Thus, as a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere "speculation") of**

6

> **a material failure by the responding party to meet its obligations.** A requesting party has the burden of proving a specific discovery deficiency in the responding party's production. See Principle 7 ("The requesting party has the burden on a motion to compel to show that the responding party's steps to preserve and produce relevant electronically stored information were inadequate."). See also discussion infra regarding potential benefits of cooperation.

*Id.*, Comment 6.b. (emphasis added)*.*

Here, Defendants are in the best position to determine how to fulfill their discovery obligations, and Plaintiffs have made no showing of any material failure by either of the Defendants to meet ESI-related discovery obligations, or any other justification for additional intervention by the Court, much less specific formatting directives.  Plaintiffs' request is also premature because, at this point, at the time Plaintiff filed their Motion, Defendants responses to written discovery were not yet even due, and Plaintiffs can offer nothing more than speculation as to the potential confusion or burden that will result in the absence of their proposed ESI Protocol.

Plaintiffs' assertion that their proposed formatting requirements are the "industry standard" is unsupported by evidence or authority and is insufficient to justify the restrictive protocol they request.  *See Williams v. Sprint/United Mgmt. Co.*, 2006 U.S. Dist. LEXIS 101071, *43-44, 2006 WL 3691604 (D. Kan. 2006) (denying request for production of emails in native format where "Plaintiffs have not sufficiently explained why they need the transmittal e-mails in their native format.").  In the over eight decades of combined experience of defense counsel, ESI protocols like the one Plaintiffs propose are not typically agreed to or entered in cases of this sort.  Because Plaintiffs have made no tangible, evidence-based showing of need for specific restrictions on document production format, their request should be denied.

Plaintiffs' suggestion that the Court approved the format utilized in their proposed ESI protocol in *Nat'l Jewish Health v. WebMD Health Servs. Group*, 305 F.R.D. 247 (D. Colo. 2014) is not accurate. First of all, *Nat'l Jewish Health* is distinguishable because it was a document-intensive commercial dispute. The Court specifically noted that the production at issue involved "approximately 279,000 WebMD ESI documents," and that "approximately 100,000 duplicate documents" had been removed. *Nat'l Jewish Health*, 305 F.R.D. at 251. Thus, it is nothing like this case, in which the total production to date has been approximately 1,000 pages and in which the total production, even after discovery responses have been served likely not be much more than the 1,000 pages already produced, a totally different and much lesser scale than in *Nat'l Jewish Health*.

Moreover, Plaintiffs fail to mention that the portion of the case they rely upon **did not involve** a dispute over whether to enter an order for an ESI protocol. *Id*. at 253-254. Rather, it involved a discovery dispute under Fed. R. Civ. P. 34(b)(2)(E)(ii). *Id*. at 253-254. National Jewish had requested that WebMD produce emails "in native format" or, alternatively, in TIFF or .pdf format. *Id*. at 253. It also "specifically requested that WebMD produce emails in MSG format, which is a near-native format." *Id*. Thus, the court held that WebMD properly produced "emails in MSG format" in part because National Jewish specifically requested that the emails be produced in that format. *Id*. The court further held:

> Even if NJH had not requested the production of emails in MSG format, WebMD's production of emails in MSG format would be proper. Rule 34(b)(2)(E)(ii) trumps specific instructions in discovery requests such that "even if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata . . . because the production is in usable form, e.g., electronically searchable and paired with essential metadata." *Aguilar*, 255 F.R.D. at 356-57 (citing Sedona

> Principles). "Email is not typically produced in native file format because the extraction of individual emails from a large database containing other emails requires conversion of the file format into a near-native format." 1-37A Moore's Federal Practice - Civil § 37A.

*Id.* at 253-254. Thus, *Nat'l Jewish Health* does not support a request for an ESI protocol in this case, nor does it suggest that this Court has previously approved a similar protocol containing similar formatting requirements. If anything, *Nat'l Jewish Health* actually supports using the framework established by the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 34(b)(2)(E), rather than imposing a protocol with formal and rigid formatting requirements.

Plaintiffs argue that Defendants should be required to produce metadata for all electronic documents produced, including documents digitized for this litigation. (*Plaintiffs' Motion for Order to Establish ESI Protocol, pp. 6-10*). However, Plaintiffs have failed to demonstrate that such metadata is relevant, or even potentially relevant, to the issues in this case. Plaintiffs' reliance on *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640 (D. Colo. 2005) in support of their argument is misplaced. The portion of *Williams* Plaintiffs rely on did not involve a request for entry of an ESI protocol. *Id.* at 651-652. Williams was an age discrimination suit in which the plaintiff sought, and the court ordered the defendant to produce, reduction-in-force spreadsheets as kept in the ordinary course of business. *Williams* involved the question of whether a court order "directing Defendant to produce electronic spreadsheets as they are kept in the ordinary course of business requires Defendant to produce those documents with the metadata intact." *Id.* at 651.

> Applying the Sedona Principles, the Court specifically noted:
>
> With regard to metadata in general, the Court looks to Principle 12 and Comment 12.a. to the Sedona Principles. **Based upon this Principle and Comment, emerging standards of electronic discovery appear to articulate a general presumption against the production of metadata** but provide a clear caveat when the producing party is aware or should be reasonably aware that particular metadata is relevant to the dispute.

*Id.* at 652 (emphasis added). However, the Court recognized that, with respect to spreadsheets, the metadata was a part of the document and therefore discoverable. *Id.* Accordingly, the Court held: "when a party is ordered to produce electronic documents as they are maintained in the ordinary course of business, the producing party should produce the electronic documents with their metadata intact, unless that party timely objects to production of metadata, the parties agree that the metadata should not be produced, or the producing party requests a protective order." *Id.*

*Williams* is factually distinguishable from this case because, in that case, the court made a specific finding that metadata that comprised a part of relevant and discoverable spreadsheets that the Court had ordered to be produced was a part of those spreadsheets and therefore discoverable. *Id.* Here, the Court has not ordered any party to produce any documents in the ordinary course of business. It is not clear whether the discovery responses will even include additional documents other than what has already been produced by the parties as part of the rule 26(a)(1) disclosures. Thus, despite its apparently-broad holding, *Williams* does not support the entry of an order requiring the parties to produce all metadata for all electronically-stored documents or documents digitized for this litigation.

At this stage of the litigation it would be premature to order the parties to produce all metadata for all electronically stored documents. As things presently stand, it is not

clear what documents, if any, the parties possess that have metadata, much less that all of the metadata attached to all of those documents is relevant, potentially relevant, or discoverable. Courts have rejected similar overbroad requests. In *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146 (D. Mass. 2009), for example, the Court rejected a similar request for "all of the metadata associated with emails and word documents" for two reasons:

> First, case law shows wariness about metadata's value in litigation. Many courts have expressed reservations about the utility of metadata, explaining that it does not lead to admissible evidence and that it can waste parties' time and money. Wyeth v. Impax Labs., Inc., 248 F.R.D. 169, 171 (D. Del. 2006); Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 651 (D. Kan. 2005). Second, Rule 34 militates against the broad, open disclosure of metadata that the Shareholders seek. The Rule 34 Advisory Committee Notes to the 2006 Amendment express concern that producing diverse types of electronically stored information in the same format would be costly, burdensome, and ultimately fruitless. Fed. R. Civ. P. 34, advisory committee's notes. Instead, the notes explain that requests should be tailored to each type of program, so only necessary data is produced.

*Id*. at 149-150.

Likewise, in *S2 Automation LLC v. Micron Tech., Inc.*, 2012 U.S. Dist. LEXIS 120097, 2012 WL 3656454 (D.N.M. August 9, 2012) the Court held:

> Ultimately, it is difficult for the Court to make any broad proscriptions about the utility of metadata. In some instances, particularly when the native format of a document contains a large amount of dynamic information, an image format of electronic discovery may severely reduce its utility. A good example would be formulas that apply to cells in a spreadsheet. See Sedona Best Practices, supra, at 60 ("In addition, application metadata may be critical to allow the functioning of routines within the file, such as cell formulae in spreadsheets."). In other circumstances, metadata may have virtually no evidentiary value, such as when there is no dispute about custodians of a document….

*Id*. at *87. Relying on *Dahl*, the Court held: "[r]ather than a sweeping request for metadata, the Shareholders should tailor their requests to specific word documents,

11

specific emails or specific sets of email, an arrangement that, according to their memorandum, suits the PE Firms. This more focused approach will, the court hopes, reduces the parties' costs and work. Furthermore, it reflects the general uneasiness that courts hold over metadata's contribution in assuring prudent and efficient litigation." *Id*. at *88-*89.

The same is true in this case.  Without an understanding of what documents and ESI the parties possess, this Court cannot possibly ascertain whether that metadata is relevant, discoverable, and should be produced.  This is a wrongful death case involving an inmate who was incarcerated for 16 days, is not document-intensive, and to date has resulted in the exchange of minimal ESI.  Plaintiffs' Motion does not present any evidence that the "creation or authorship of documents," (*Plaintiffs Motion for Order to Establish ESI Protocol, Doc. 56, p. 8*), is even an issue in this case.  Thus, it makes no sense to require all parties to produce all metadata without knowing what metadata exists or whether it could even conceivably be relevant.

The only specific example Plaintiffs provide regarding the potential relevance of metadata is that "Defendant GEO Group, Inc.'s ("GEO") policies **may** have changed over time, and, understanding the various iterations of those policies, which metadata could help shed light on, is highly relevant to Plaintiffs' claims," (*Plaintiffs' Motion for Order to Establish ESI Protocol, Doc. 56, pp. 3* (emphasis added)*, 8, n.1*).  However, Plaintiffs do not explain why this is true. Whether or not a policy was in a different iteration or version before Mr. Samimi's incarceration is irrelevant to the policy in effect or the medical care Mr. Samimi received during his incarceration and do not prove or tend to prove any fact in issue in this case.  Additionally, metadata is not necessary to

assess how policies may have changed – any such changes will be obvious from the policies themselves whether or not they are produced with metadata.  And, change to policies or procedures after the events described in the complaint are not relevant or admissible to prove Plaintiffs' claims.  *See e.g.*, *Luera v. Snyder*, 599 F. Supp. 1459, 1463 (D. Colo. 1984) ("evidence of actual implementation of policy changes is inadmissible as irrelevant and as evidence of a subsequent remedial measure prohibited by Federal Rule of Evidence 407.").  Since this is the only example Plaintiffs provide, their assertion that hypothetical policy changes might be relevant cannot and does not justify their rigid and far-reaching ESI protocol.

Plaintiffs also assert that the parties should be required to produce metadata for documents digitized as a part of this litigation.  (*Plaintiffs Motion for Order to Establish ESI Protocol, Doc. 56, pp. 9-10*).  However, the Sedona Principles disfavor discovery regarding discovery, *Sedona Principles*, *supra*, *Comment 6.b,* and it is difficult to conceive of the relevance of metadata for documents that are maintained in hard-copy and digitized by the attorneys or their staff for purposes of facilitating disclosure and production in this litigation.  Moreover, such an order is beyond the scope of an ESI protocol.  *See Stuart v. Town of Framingham*, 2018 U.S. Dist. LEXIS 12728, *4, 2018 WL 575847 (D. Mass. January 26, 2018) ("the court agrees that requirements for production of hard-copy documents … are outside the scope of an ESI order").

Plaintiffs' suggestion that production of all metadata is needed to prevent "modification of evidence," (*Plaintiffs' Motion for Order to Establish ESI Protocol, Doc. 56, p. 7*), is a baseless personal attack.  There is absolutely no evidence that any parties have modified or will modify evidence, or that the production of metadata is

necessary to prevent them from doing so. Plaintiffs' thinly-veiled accusation, which seems designed to prejudice the Defendants in the eyes of the Court, is insufficient to justify the overly-broad order Plaintiffs request. *Physicians Committee for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) ("Discovery to pursue a suspicion or a hunch is unwarranted.").

Rather than ordering the parties to produce all metadata for all documents, the Court should preserve the more flexible approach taken by the Rules of Civil Procedure. Indeed, Rule 34(b)(2)(E)(ii) specifically permits Plaintiffs to "specify a form for producing electronically stored information" in their requests for production and Plaintiffs **actually did this**, requesting production of documents in tiff format with load files and metadata. (*Exhibit C, Plaintiffs' Requests for Production to Defendant GEO, p. 8; Exhibit D, Plaintiffs' Requests for Production to Defendant Peterson, p. 8*). Thus, rather than ordering all parties to adhere to Plaintiffs' preferred format, the Court should allow the discovery process to take place organically and trust the parties to confer in good faith to resolve any ESI-related problems as they arise rather than dictating rigid format requirements at this stage of the litigation. Because Plaintiffs have failed to demonstrate that their proposed ESI protocol is necessary to ensure a transparent or fair process, their Motion should be denied.

### III. PLAINTIFFS REQUESTED ESI ORDER IS NOT PROPORTIONAL TO THE NEEDS OF THE CASE.

Fed R. Civ. P. 26 defines the scope of discovery as follows:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in

14

> resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Proportionality considerations also play an important role in discovery disputes regarding ESI. *See* Sedona Principles, *supra*, Comment 7.a. (noting that in deciding a motion to compel ESI, a court should consider the proportionality factors in Rule 26(b)(1)).

Here, Plaintiffs' motion makes no showing that *any* of the proportionality principles of Fed. R. Civ. P. 26(b)(1) justify an order requiring such over-broad and burdensome ESI protocols. Plaintiffs have made no showing, for example, that their proposed ESI protocol is necessary due to the importance of the issues in the case, the parties' relative access to information, or the parties' resources. (*Plaintiffs' Motion for Order to Establish ESI Protocol, Doc. 56, pp. 1-10*). Nor do Plaintiffs explain how their ESI protocol is proportional given the importance of discovery in resolving the issues in the case. (*Id.*). Plaintiffs make no argument and no showing that the added burden, cost, and time trying to implement and comply with Plaintiff's onerous ESI protocol is outweighed by the likely benefit where only 1000+ pages of total records may be involved. (*Id.*). Plaintiffs make no showing that the amount of damages to which they are limited in this medical malpractice, wrongful death case justifies the time and expense of such an over-reaching and expensive ESI protocol. In fact, Plaintiffs did not disclose any documentation, information, or calculation as part of their initial disclosures supporting that they have suffered any past, current, or future economic damages, as they are required to do by Fed. R. Civ. P. 26(a)(1)(c), thereby limiting any potential recovery to non-economic damages. (*Exhibit E, Plaintiffs' Initial Disclosures, pp. 11-12*).

15

Regardless, Plaintiffs' Motion fails to identify how ESI will be relevant to any of the issues in the case.

Plaintiffs' proposed ESI protocol is actually contrary to the interests of proportionality because it requires Defendants to bear the burden of converting documents to Plaintiffs' preferred format. As one Court explained:

> As this case demonstrates, these new technologies have the capacity to be outcome determinative but often at significant expense. Thus, the courts are required to strike a balance between allowing the requesting party to take full advantage of the technologies available to it and protecting the producing party from having to pay to leave no stone unturned. Resting all of the costs of electronic discovery on the producing party may create a perverse incentive on the part of the requesting party to dispense with reason and restraint and unleash every new technology under the sun to try and find information that supports the requesting party's claims.

*Covad Communs. Co. v. Revonet, Inc.*, 258 F.R.D. 5, 16 (D.D.C. 2009). Plaintiffs have not made the necessary showing to justify, preemptively, so as to require Defendants to bear this burden and expense. Adopting Plaintiffs' proposed protocol will only encourage Plaintiff to pursue discovery that is unnecessary and disproportional to the needs of the case.

Furthermore, adopting a rigid ESI protocol also sets the stage for costly and distracting requests for sanctions. This Court need look no further that the cases Plaintiffs rely upon in support of their Motion that involve ESI-related sanction disputes. *See e.g.*, *Nat'l Jewish Health*, 305 F.R.D. at 249 (order on plaintiff's motion for sanctions); *Williams*, 230 F.R.D. at 641 (order on defendant's response to order to show cause why sanctions should not be imposed for scrubbing metadata). Entry of an order approving Plaintiffs' ESI protocol seems destined to lead to accusations of non-

16

compliance against Defendants and expensive and distracting litigation over discovery matters.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Plaintiffs Motion for Entry of Order Establishing Protocol for Production of Electronically Stored Information.

Dated this 11th day of May, 2020.

| /s/ *Gordon Vaughan, Esq.* | /s/ *Jared Ellis, Esq* |
|---|---|
| Gordon Vaughan | Craig A. Sargent, Esq. |
| Ann B. Smith | Jared Ellis, Esq. |
| Vaughan & DeMuro | Hall & Evans, LLC |
| 111 South Tejon Street, Suite 545 | 1001 Seventeenth Street, Suite 300 |
| Colorado Springs, CO 80903 | Denver, Colorado 80202 |
| gvaughan@vaughandemuro.com | sargentc@hallevans.com |
| vnd@vaughandemuro.com | ellisj@hallevans.com |
| 719-578-5500 – phone | (303) 628-3300 – phone |
| *ATTORNEYS FOR DEFENDANT* | (303) 628-3368 – fax |
| *The GEO Group, Inc.* | *ATTORNEYS FOR DEFENDANT JEFFREY PETERSON MD* |

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on this 11th day of May, 2020 I electronically filed the foregoing **DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF ELECTRONICALLY STORED INFORMATION** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Paul G. Karlsgodt, Esq.
Marc D. Flink, Esq.
Matthew C. Baisley, Esq.
Michelle R. Gomez, Esq.
Sean B. Solis, Esq.
1801 California Street, Suite 4400
Denver, Colorado 80202
Email: pkarlsgodt@bakerlaw.com
mflink@bakerlaw.com
mbaisley@bakerlaw.com
mgomez@bakerlaw.com
ssolis@bakerlaw.com

*In cooperation with the ACLU Foundation of Colorado*
Mark Silverstein, Esq.
Sara R. Neel, Esq.
Arielle Herzberg, Esq.
ACLU Foundation of Colorado
303 East 17th Avenue, Suite 350
Denver, Colorado 80203
Email: msilverstein@aclu-co.org
sneel@aclu-co.org
aherzberg@aclu-co.org

Ann B. Smith, Esq.
Gordon Vaughan, Esq.
Vaughan & DeMuro
111 South Tejon Street, Suite 545
Colorado Springs, Colorado 80903
Email: asmith@vaughandemuro.com
gvaughan@vaughandemuro.com
*Attorneys for Defendant GEO Group, Inc.*

*s/ Laura Buckingham*

Legal Assistant